# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JORGE ARMANDO CARLOS, | Case No. 2:25-cv-01900-RFB-EJY |
| Petitioner, | **ORDER** |
| v. | |
| KRISTI NOEM, *et al.*, | |
| Defendants. | |

Before the Court is the (ECF No. 5) Motion for a Temporary Restraining Order ("TRO") by Petitioner Jorge Armando Carlos. For the following reasons, the Court grants the Motion for TRO and orders Respondents to show cause why a preliminary injunction should not issue.

## I.  INTRODUCTION

This case is one of many in this district and across the country challenging the lawfulness of the Government's new policy of mandating detention of all undocumented noncitizens during the pendency of their removal proceedings—several of which have been resolved or are currently pending before the undersigned Judge. Petitioner Armando Carlos is similarly situated to the petitioners in Herrera Torralba v. Knight, Case No. 2:25-cv-01366-RFB-DJA and Maldonado Vazquez v. Feeley, Case No. 25-cv-1542 RFB-EJY, because he is detained pursuant to a regulatory automatic stay of an Immigration Judge (IJ)'s order that he be released on bond. The Department of Homeland Security (DHS) unilaterally invoked the automatic stay under C.F.R. § 1003.19(i)(2) pending its appeal of the IJ's decision to the Bureau of Immigration Appeals (BIA). This Court previously found the automatic stay—which is being invoked systemically to override the individualized determinations of the Las Vegas Immigration Court that noncitizens should be

released on bond—is unconstitutional both facially and as applied to noncitizens like Petitioner. See Herrera v. Knight, No. 2:25-CV-01366-RFB-DJA, 2025 WL 2581792 (D. Nev. Sept. 5, 2025) (granting the Petition for Writ of Habeas Corpus); Vazquez v. Feeley, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082 (D. Nev. Sept. 17, 2025) (granting a preliminary injunction to Petitioner).

As in Herrera and Vazquez, the principal basis of DHS' appeal of the IJ's bond release order is the agency's new interpretation of its detention authority under specific provisions of the Immigration Naturalization Act (INA), 8 U.S.C. §§ 1225(b)(2) and 1226(a)—an interpretation which this Court has repeatedly rejected. See Vazquez, 2025 WL 2676082 at *11-16; Roman v. Noem, No. 2:25-CV-01684-RFB-EJY, 2025 WL 2710211 (D. Nev. Sept. 23, 2025). In both cases, the Government opposed the petitioner's motions for a preliminary injunction based on purely legal and largely identical arguments to those raised by the Government in this case, and after full briefing and a hearing, the Court granted preliminary relief, enjoining Respondents from preventing the petitioners' release on bond in violation of the INA and U.S. Constitution.

Here, Petitioner seeks a TRO ordering his immediate release from detention on bond as ordered by an IJ and asserts his continued detention pursuant to the automatic stay under C.F.R. § 1003.19(i)(2) violates his due process rights under the Fifth Amendment. Because this Court already found the regulatory stay unconstitutional on its face, each day Petitioner's detention continues, he suffers the irreparable harm of the unconstitutional deprivation of his liberty. Accordingly, as this Court has already decided the purely legal issues raised in the instant Motion, this Court ordered service and responsive briefing from Respondents on an expedited basis and set an October 9, 2025 hearing.

However, after considering the Government's extension request based on widespread furloughs in the U.S. Attorney's Office, the Court concluded that an expedited response from Respondents was not feasible. See ECF No. 14. Respondents' counsel sought an extension of time to respond until October 10, 2025, which the Court granted, and vacated the October 9th hearing. ECF Nos. 15, 19. On October 10, 2025, Respondents filed an opposition to the Petition for Writ of Habeas Corpus, arguing for dismissal. ECF No. 20. The Court construes the response as an opposition to the Motion for TRO and addresses Respondents' arguments below. For the following

reasons, the Court grants the TRO and orders Respondents to show cause why a preliminary injunction should not issue.

## II. PROCEDURAL HISTORY

On October 6, 2025, Petitioner Jorge Armando Carlos, who is currently detained in ICE custody at the Nevada Southern Detention Center (NSDC), filed his 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus against Respondents John Mattos, as Warden of NSDC, Kristi Noem, in her official capacity as Secretary of DHS, Pamela Bondi, in her official capacity as Attorney General of the United States, Jason Knight, in his official capacity as Acting Director of the Salt Lake City Field Office of ICE, and Todd Lyons, in his official capacity as acting director of ICE. ECF No. 1. Petitioner concurrently filed the instant Motion for TRO with a sworn declaration by his counsel in support. ECF Nos. 5, 6. The declaration attests to the immediate and irreparable harm suffered by Petitioner and his wife due to his prolonged incarceration even though an IJ ordered him release on bond. ECF No. 6.

This case was initially assigned to the honorable Judge Gloria M. Navarro, but on October 6, 2025, was transferred to the undersigned judge as related to two pending putative class actions, Case Numbers 2:25-cv-01542-RFB-EJY and 2:25-cv-01553-RFB-BNW. ECF No. 7. The same day, the Court conducted a preliminary review of the Petition and Motion for TRO, ordered that they be served on Respondents, and set an expedited briefing schedule and October 9, 2025 hearing on the Motion for TRO. ECF Nos. 10-11. On October 7, 2025, counsel for Respondents filed a notice of appearance and motion to extend time to respond and continue the hearing, citing the federal government shut down and widespread furlough of Assistant U.S. Attorneys (AUSAs). ECF Nos. 13-14. The Court granted the requested extension of time to respond until October 10, 2025, and vacated the hearing. See ECF Nos. 15, 19. On October 10, 2025, Respondents filed their Response to the Petition for Writ of Habeas Corpus, arguing for its dismissal. ECF No. 20.

The Court's Order on the TRO follows.

///

///

## III. BACKGROUND

The Court fully incorporates by reference the statutory and regulatory background relevant to the Government's challenged mandatory detention policy under the C.F.R. § 1003.19(i)(2) automatic stay set forth in its ruling in Maldonado Vazquez, 2025 WL 2676082, at *6-11.

The Court makes the following findings of fact relevant to Petitioner. Petitioner is a noncitizen who entered the U.S. without inspection in or around February 2005, and since then has continuously resided in the country for over twenty years without departure. Petitioner and his wife have a 19-year-old son who is currently serving in the U.S. Marine Corps and Petitioner serves as the father figure to his 22-year-old stepson. Petitioner is the primary breadwinner for his household and has worked consistently in the construction industry where he is known for his dedication, reliability, and work ethic. He has filed federal income tax returns annually under an Individual Taxpayer Identification Number (ITIN). He has deep and lasting ties to the Reno, Nevada community where he resides.

Petitioner appears to have a domestic battery conviction from March 20, 2019. On July 16, 2025, Petitioner was arrested in Reno, Nevada for a charge of domestic battery and held at the Washoe County Jail. ICE took custody of Petitioner the next day, on an administrative warrant, and initiated removal proceedings on July 18, 2025.[1] The domestic battery charge remains pending. ICE issued a Notice to Appear and classified Petitioner as "an alien present in the U.S. who has not been admitted or paroled" rather than an "arriving alien," and charged him as inadmissible and subject to removal under 8 U.S.C. §§ 1182(a)(6)(A)(i) and (a)(7)(A)(i)(I), to be held in detention pending a hearing before an immigration judge. ECF No. 2 at 4-6. He has been detained at NSDC in Pahrump, Nevada since then.

According to Respondents, Petitioner has a $10,000 bench warrant for failure to appear before the Washoe County court on the July 16, 2025 domestic violence charge. However, Respondents provide no evidence or details regarding this warrant, such as when it was issued. If Petitioner was transferred directly from Washoe County Jail into ICE custody at the request of

---

[1] It is not clear from the record whether Petitioner was released from Washoe County jail before ICE took him into custody, or if he was transferred from Washoe County jail directly into ICE custody.

- 4 -

1  DHS, it is unclear whether the failure to appear in criminal court was due to Petitioner's detention
2  at NDSC.

3  On July 31, 2025, Petitioner requested a custody redetermination hearing (*i.e.*, bond
4  hearing) before the Las Vegas Immigration Court. At the August 12, 2025 hearing before IJ Lindsy
5  Roberts, he submitted evidence demonstrating that he is not a danger to the community or a flight
6  risk, including letters attesting to his positive character and strong community ties, and proof of
7  his son's active-duty service in the United States Armed Forces which provides an avenue for
8  Petitioner to obtain status as a lawful permanent resident. DHS argued the IJ did not have
9  jurisdiction to consider bond based on its new interpretation of 8 U.S.C. § 1225(b)(2) as mandating
10  detention of any noncitizen who entered the country without inspection, no matter where they were
11  intercepted or how long they resided in the U.S, and in the alternative, argued that Petitioner should
12  be considered a danger to the community based on his 2019 criminal conviction and pending
13  domestic battery charge.

14  The IJ rejected DHS' statutory argument as contrary to BIA precedent and found that
15  because Petitioner had not recently entered the U.S. and was not arrested near a port of entry, he
16  was not an "applicant for admission" within the class of individuals subject to mandatory detention
17  under 8 U.S.C. § 1225(b), but rather was subject to detention under § 1226 as interpreted by BIA
18  precedent. See ECF. No 2 at 16-17. The IJ also found Petitioner did not fall under the exceptions
19  to discretionary detention under § 1226(c) and was thus eligible for bond under § 1226(a). Id. at
20  17. The IJ further found by clear and convincing evidence that Petitioner was not dangerous or a
21  flight risk and ordered his release on bond in the amount of $6,000 with alternatives to detention
22  at the discretion of DHS. Id. DHS reserved its right to appeal the IJ's order to the BIA, and within
23  24 hours, invoked the automatic stay pending appeal under 8 C.F.R. § 1003.19(i)(2) by filing a
24  Form EOIR-43. On August 25, 2025, within the ten-day deadline required by regulation, counsel
25  for DHS/ICE filed a notice of appeal with the BIA with an addendum setting forth the basis for
26  the appeal.

27  On September 11, 2025, IJ Roberts issued her memorandum decision discussing the
28  reasons she granted bond to Petitioner. She further stated:

> [a]fter the August 12, 2025 hearing and before the issuance of this memorandum, the BIA issued its decision in Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025), holding that immigration judges lack authority to hear bond requests or grant [sic] bond to aliens who are present without admission. As the respondent was not admitted to the United States he would appear to be subject to mandatory detention under this new decision.

ECF No. 2 at 17. Pursuant to the 8 C.F.R. § 1003.19(i)(2) automatic stay, Petitioner has remained in ICE detention, unable to pay the $6,000 bond he was granted by the IJ.

Petitioner's family members are struggling due to his detention—his wife is left solely responsible for all household expenses and caregiving, while his son who is currently deployed in the Marine Corps has expressed difficulty focusing on his duties due to concerns about his father's detention and his mother's well-being. Petitioner's continued detention also jeopardizes the pending parole-in-place application filed by his son and the Form I-130 petition filed by his stepson, both of which are critical to his potential eligibility for adjustment of immigration status. His detention has also caused him mental and emotional distress and interferes with his ability to participate effectively in his removal proceeding, by limiting his access to legal counsel, documents, witnesses, and other necessary evidence.

## IV. LEGAL STANDARDS

### A. Temporary Restraining Order

Pursuant to Federal Rule of Civil Procedure 65(b), a court may grant a temporary restraining to prevent "immediate and irreparable injury." A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). Temporary restraining orders are subject to this same legal standard. See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain such relief a plaintiff must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that the public interest favors an injunction." Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended (Mar. 11, 2014) (citing Winter, 555

1   U.S. at 20).

2         The Ninth Circuit uses a sliding scale variant of the Winter standard: the "serious questions" test. All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011) (affirming the continued viability of this doctrine post-Winter). According to this test, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction [or TRO], so long as the plaintiff also shows that there is a likelihood of irreparable injury, and that the injunction is in the public interest." Id. at 1135. Courts in the Ninth Circuit evaluate "these factors on a sliding scale, such that a stronger showing of one element may offset a weaker showing of another." Recycle for Change v. City of Oakland, 856 F.3d 666, 669 (9th Cir. 2017).

**B.  § 2441 Petition for Writ of Habeas Corpus**

      The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001); see also Demore v. Kim, 538 U.S. 510, 517 (2003).

**V.  DISCUSSION**

  **A.  Jurisdiction**

      Respondents first assert the Court lacks jurisdiction over Petitioner's habeas challenge to the lawfulness of his detention by Respondents. Respondents' arguments are foreclosed by Ninth Circuit and Supreme Court precedent. See Vazquez, 2025 WL 2676082, at *7-9; Roman, 2025

1  WL 2710211, at *5 (citations omitted). The Court has habeas jurisdiction to review Petitioner's
2  challenge to the lawfulness of his detention, because the relevant jurisdiction stripping provisions
3  of the INA, 8 U.S.C. §§ 1252(a), (b)(9), (g), and (e) do not apply, as discussed and held by the
4  Court in granting habeas relief to similarly situated petitioners, which the Court fully incorporates
5  by reference. See Vazquez, 2025 WL 2676082, at *7-9; Roman, 2025 WL 2710211, at *5.

### B. Administrative Exhaustion

The Court fully incorporates by reference its finding that administrative exhaustion is excused as futile. See Herrera, 2025 WL2481792, at *7-8; Vazquez, 2025 WL 2676082, at *9-10.

### C. Temporary Restraining Order

#### i. *Likelihood of Success or Serious Questions*

First, the Court finds Petitioner has satisfied the most important Winter factor: he is likely to succeed on the merits of his Petition for Writ of Habeas Corpus, because (1) § 1226(a), not § 1225(b)(2), applies to him, and therefore his detention without bond violates the INA and (2) Respondents' continued detention of Petitioner pursuant to the automatic stay of the IJ's bond release order under 8 C.F.R. §1003.19(i)(2) violates Petitioner's procedural and substantive due process rights. See Matsumoto v. Labrador, 122 F.4th 787, 804 (9th Cir. 2024) (Likelihood of success on the merits is the most important factor in a preliminary injunction analysis); see also Baird v. Bonta, 81 F.4th 1036, 1042 (9th Cir. 2023) (likelihood of success is especially important where a plaintiff seeks a preliminary injunction because of an alleged constitutional violation).

The Court fully incorporates by reference its reasoning and holding regarding the statutory question and automatic stay from Vazquez. WL 2676082, at *11-22.

Respondents only new argument that was not raised in Vazquez also fails. Respondents state that the BIA will "hopefully" reverse the IJ's order that Petitioner be released on bond because "he is a danger to the community" based on his 2019 conviction, pending July 2025 domestic battery charge, and warrant for failure to appear in Washoe County. ECF No. 15 at 21-22. The Notice of Appeal of the IJ's bond release order and Memorandum of Law in support, filed by counsel for ICE/DHS, sets forth two bases for the appeal to the BIA: (1) first, the IJ erred in holding a bond hearing, because 8 U.S.C. § 1225(b)(2) mandates Petitioner's detention without any

individualized consideration of whether he is a danger or flight risk and (2) the IJ erred in finding that Petitioner does not present a danger to persons or property and does not pose a risk of flight, based on Petitioner's 2019 domestic battery conviction, and the July 17, 2025 charge, which was erroneously referred to by counsel for DHS/ICE as a conviction. See ECF No. 20-4 at 3-4. No reference is made to the $10,000 bench warrant that Respondents reference in their briefing before this Court. Id.

Again, the Court rejects Respondents' statutory interpretation, and finds Petitioner is detained under § 1226(a). Respondents' argument that the Court should override the factual determination by the IJ that Petitioner is not a danger to the community or flight risk also fails, because federal courts have no jurisdiction to review the IJ's discretionary weighing of the evidence and factual determination that a noncitizen is entitled, or not entitled, to release on bond. See Prieto-Romero v. Clark, 534 F.3d 1053, 1058 (9th Cir. 2008) (Where a noncitizen is detained under §1226(a) "discretionary decisions [by an IJ] granting or denying bond are not subject to judicial review) (citing § 1226(e)).

Additionally, as this Court held in Herrera, the regulations regarding an appeal of an IJ's factual determination that a noncitizen is not a flight risk or danger provide for an avenue for DHS to request an emergency stay from the BIA; the BIA would then conduct a preliminary review of the merits of DHS' appeal based on the individual circumstances of the detainee and the merits of the case and determine if a stay is justified. See Herrera 2025 WL 2581792, at *11 (citing 8 C.F.R. § 1003.19(i)(1)). "This process cures the due process infirmities of § 1003.19(i)(2) while preserving the government's interest in preventing an erroneous release." Id. (quoting Günaydin v. Trump, No. 25-CV-01151 (JMB/DLM), —— F.Supp.3d ——, 2025 WL 1459154, at *9 (D. Minn. May 21, 2025).

In sum, the Court finds Respondents' arguments that the Court should override the IJ's bond release order based on Petitioner's criminal history are unavailing.

### ii. *Irreparable Harm*

The next factor requires a showing "that irreparable harm is likely, not just possible" in the absence of a TRO. Alliance for the Wild Rockies, 632 F.3d at 1131. Petitioner clearly faces

irreparable harm in the absence of a judicial intervention. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)). Thus, it follows "inexorably" from this Court's conclusion that detention via the automatic stay is unconstitutional—such that Petitioner would continue to be deprived of his physical liberty in violation of procedural and substantive due process in the absence of a TRO—that Petitioner has carried his burden as to irreparable harm. Hernandez v. Sessions, 872 F.3d 976, 995 (9th Cir. 2017). The Ninth Circuit has further recognized in concrete terms the irreparable harms "imposed on anyone subject to immigration detention (or other forms of imprisonment)." Id. In the absence of relief, "harms such as these will continue to occur needlessly on a daily basis." Id.

### iii.  *Balance of Equities and Public Interest*

The remaining two factors for a preliminary injunction—the balance of equities and public interest—"merge" when the government is the opposing party. Baird v. Bonta, 81 F.4th 1036, 1040 (9th Cir. 2023) (quotations omitted). When "the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." Hernandez, 872 F.3d at 996 (quoting Stormans, Inc. v. Selecky, 586 F.3d 1109, 1139 (9th Cir. 2009)). The Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." Galvez v. Jaddou, 52 F.4th 821, 832 (9th Cir. 2022) (holding that the district court did not abuse its discretion in finding the balance of hardships weighed in favor of plaintiffs who credibly alleged that the government was violating the INA).

The harm to the government here is minimal. The Court is simply ordering a recognition of the IJ's bond hearing determination—a bond hearing process which is contemplated by the regulations and is a part of the Government's normal operations in any event. Moreover, it is DHS' new reading of the INA which upends decades of consistent agency practice, and subjects millions of individuals to mandatory detention, that is creating the significant fiscal and administrative burden on the Government. However, this is a burden of its own choosing.

In contrast, the hardships faced by Petitioner and the public interest in granting a TRO

weigh strongly in his favor. Detention has separated Petitioner from his family, employment, and community and imposed increased financial, caregiving, and emotional burdens on his wife and sons. Hernandez, 872 F.3d at 996 ("in addition to the potential hardships facing [the plaintiff] in the absence of the injunction, the court may consider the indirect hardship to their friends and family members) (quotation marks and citation omitted). And because the Court has found it is likely that Respondents are unlawfully detaining Petitioner under § 1225(b)(2), "neither equity or the public interest are furthered" by allowing Respondents' violation of the INA to continue—quite the opposite. Galvez, 52 F.4th at 832; Hernandez, 872 F.3d at 996 ("The public interest benefits from an injunction that ensures that individuals are not deprived of their liberty and held in immigration detention because of . . . a likely unconstitutional process.").

As such, this Court finds the balance of the equities and public interest "tip sharply towards" Petitioner. All. For the Wild Rockies, 632 F.3d at 1127. Therefore, even under a lesser showing that Petitioner has raised only "serious questions going to the merits" of his challenge to his detention under the INA and Constitution, Petitioner is entitled to a TRO.

**D. Bond**

Under Federal Rule of Civil Procedure 65(c), a court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'" Johnson v. Couturier, 572 F.3d 1067, 1086 (2009) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, 'the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" Id. (citation modified) (quoting Jorgensen, 320 F.3d at 919). Respondents do not argue that Petitioner's release pursuant to the IJ's order would be costly, so the Court declines to set bond beyond the amount imposed by the IJ.

///

///

## VI. CONCLUSION

Based on the foregoing **IT IS HEREBY ORDERED** that Petitioner's Motion for TRO (ECF No. 5) is **GRANTED**:

(1) Respondents are **ENJOINED** from continuing to detain Petitioner pursuant to the C.F.R. § 1003.19(i)(2) automatic stay or otherwise denying Petitioner release on bond on the basis that he is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2).

(2) Respondents are **ORDERED** to release Petitioner from ICE custody by **5:00 p.m. on October 11, 2025**. Petitioner shall be subject to the bond and other conditions imposed by the IJ.

(3) **IT IS FURTHER ORDERED** that Petitioner shall have until **12:00 p.m. on October 16, 2025** to satisfy the bond conditions. If he does not satisfy them, he will be subject to rearrest and detention.

This Order shall be in effect until **5:00 p.m. on October 24, 2025**.

**IT IS FURTHER ORDERED** that Respondents **SHOW CAUSE** as to why a preliminary injunction should not issue. Respondents shall file any response by **October 16, 2025** and Petitioner shall file any reply by **12:00 p.m. on October 21, 2025**. The Court **SETS** a hearing on whether a preliminary injunction should issue on **October 22, 2025 at 8:00 a.m.** in Las Vegas Courtroom 7C.

**DATED:** October 10, 2025.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**