# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JORGE ARMANDO CARLOS, | Case No. 2:25-cv-01900-RFB-EJY |
| Petitioner, | **ORDER** |
| v. | |
| KRISTI NOEM, *et al.*, | |
| Respondents. | |

On October 10, 2025, this Court issued a Temporary Restraining Order (TRO) set to expire on October 24, 2025, at 5:00 p.m. The Court further ordered briefing and set a hearing on whether a preliminary injunction should issue. For the following reasons, the Court issues a preliminary injunction pending resolution on the merits of Petitioner's Writ of Habeas Corpus.

## I.  BACKGROUND

Petitioner is a noncitizen who entered the United States without inspection in or around February 2005. On July 16, 2025, Petitioner was arrested for a charge of domestic battery and booked in Washoe County Jail. The next day, July 17, 2025, he was released by local law enforcement directly into custody of Immigration and Customs Enforcement (ICE) and detained at Nevada Southern Detention Center (NSDC). Due to his detention by ICE, he was unable to appear for his criminal proceedings in Washoe County, and a $10,000 bench warrant was issued at the request of the State of Nevada. See ECF No. 23-1. The criminal charges remain pending. Id.

On August 12, 2025, an Immigration Judge (IJ) of the Las Vegas Immigration Court held a bond hearing to consider whether Petitioner's continued detention pending the resolution of removal proceedings was justified. At the hearing DHS argued to the IJ that Petitioner could not

be considered for release on bond, because he is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2). That argument is based on DHS' reinterpretation of 8 U.S.C. § 1225 as mandating the detention of all undocumented noncitizens in the United States pending the resolution of their removal proceedings—which can take months or years—no matter how long they have resided in the country, without consideration of whether the government has a legitimate interest in detaining an individual because they are either a flight risk, dangerous, or a threat to national security. This policy, which DHS, in conjunction with the Department of Justice, adopted on July 8, 2025,[1] subjects *millions* of undocumented residents to prolonged detention without the opportunity for a bond hearing, in contravention of decades of agency practice and robust due process protections hitherto afforded to such residents under 8 U.S.C. § 1226(a).[2] On September 5, 2025, the Bureau of Immigration Appeals (BIA) adopted the policy in a precedential decision. See Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025).

The overwhelming majority of district courts across the country, including this Court, that have considered DHS and the BIA's new statutory interpretation have found it incorrect and unlawful. See Maldonado Vazquez v. Feeley, 2:25-CV-01542-RFB-EJY, 2025 WL 2676082 (D. Nev. Sept. 17, 2025) (finding the statutory text and "canons of statutory interpretation, including the legislative history, regulations, and long history of consistent agency practice, as well as the doctrine of constitutional avoidance" demonstrate the government's new reading of § 1225(b)(2) is likely unlawful); see also Rodriguez v. Bostock, No. 3:25-CV-05240-TMC, 2025 WL 2782499 (W.D. Wash. Sept. 30, 2025) ("Every district court to address this question has concluded that the government's position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice.") (collecting cases).

Similarly, at Petitioner's bond hearing, the IJ rejected DHS' argument that § 1225(b)(2) applies to Petitioner, and found his prolonged detention was not warranted under § 1226(a),

---

[1] See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, AILA Doc. No. 25071607 (July 8, 2025), https://perma.cc/5GKM-JYGX.

[2] See Kyle Cheney & Myah Ward, Trump's new detention policy targets millions of immigrants. Judges keep saying its illegal., Politico (Sept. 20, 2025 at 4:00 p.m. EDT), https://www.politico.com/news/2025/09/20/ice-detention-immigration-policy-00573850, https://perma.cc/L686-E97L.

because Petitioner is neither a flight risk nor danger to the community. Accordingly, the IJ ordered Petitioner be released upon payment of a $6,000 bond, and subject to "Alternatives to Detention" at ICE's discretion. Within one day of the IJ's order, DHS invoked an automatic stay pursuant to 8 C.F.R. § 1003.18(i)(2). DHS then preserved the stay for up to ninety days by filing an appeal of the IJ's decision before the BIA on August 25, 2025. See 8 C.F.R. § 1003.6(c)(4).

In a related habeas case, this Court already considered the legality of 8 C.F.R. § 1003.18(i)(2) (the "automatic stay"), which vests authority in a DHS official to unilaterally and automatically stay an IJ's order that a noncitizen's continued detention is not warranted. This Court held that the automatic stay's lack of procedural safeguards to prevent the federal government from arbitrarily detaining noncitizens for up to ninety days renders it unconstitutional under the Due Process Clause of the Fifth Amendment, both facially and as applied to noncitizens like Petitioner. See Herrera v. Knight, No. 2:25-CV-01366-RFB-DJA, 2025 WL 2581792, at *8-13 (D. Nev. Sept. 5, 2025); Vazquez, 2025 WL 2676082, at *21.

Consistent with its previous rulings, this Court ordered Petitioner be released subject to the bond and other conditions imposed by the IJ and enjoined Federal Respondents from "continuing to detain Petitioner pursuant to the C.F.R. § 1003.19(i)(2) automatic stay or otherwise denying Petitioner release on bond on the basis that he is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)." See ECF No. 21. The Court gave Petitioner until October 16, 2025, to satisfy the bond. Id. at 21. On October 15, Petitioner paid his bond, and it was processed on October 17, 2025. See ECF No. 25. Petitioner also presented himself to ICE on October 15, 2025, and enrolled in the Intensive Supervision Appearance Program (ISAP), through which he is subject to in-person check-ins and digital monitoring. See ECF No. 24 at 3; ECF No. 25 at 5. Petitioner has complied with all program requirements to date. Id.

## II. PROCEDURAL HISTORY

On October 6, 2025, Petitioner filed his 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus. ECF No. 1. Petitioner concurrently filed a Motion for TRO with a sworn declaration by his counsel in support. ECF Nos. 5, 6. This case was initially assigned to the honorable Judge

Gloria M. Navarro, but on October 6, 2025, was transferred to the undersigned Judge as related to two pending putative class actions, Case Numbers 2:25-cv-01542-RFB-EJY and 2:25-cv-01553-RFB-BNW. ECF No. 7. The same day, the Court conducted a preliminary review of the Petition and Motion for TRO, ordered that they be served on Respondents, and set an expedited briefing schedule and October 9, 2025 hearing on the Motion for TRO. ECF Nos. 10-11. On October 7, 2025, counsel for Respondents filed a notice of appearance and motion to extend time to respond and continue the hearing, citing the federal government shut down and widespread furlough of Assistant U.S. Attorneys (AUSAs). ECF Nos. 13-14. The Court granted the requested extension of time to respond until October 10, 2025, and vacated the hearing. See ECF Nos. 15, 19.

On October 10, 2025, Respondents filed their Response to the Petition for Writ of Habeas Corpus, arguing for its dismissal. ECF No. 20. The Court construed the Response as an opposition to the Motion for TRO, and issued a TRO on October 10, 2025, set to expire after 14 days. ECF No. 21. The Court further ordered Respondents to show cause why a preliminary injunction should not issue. Id. at 3. Respondents filed their response to the Order to Show Cause on October 16, 2025, which argued "the issuance of a preliminary injunction is moot" because Petitioner is no longer detained. ECF No. 23. On October 20, 2025, Petitioner filed his reply in support of the issuance of a preliminary injunction. ECF Nos. 24-25. On October 22, 2025, the Court held a hearing on the preliminary injunction and took the matter under advisement, with the instant written order to follow. ECF No. 26.

### III.   LEGAL STANDARDS

#### A. Preliminary Injunction

Pursuant to Federal Rule of Civil Procedure 65(b), a court may grant a preliminary injunction to prevent "immediate and irreparable injury." A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To obtain such relief a plaintiff must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the

1  balance of equities tips in its favor, and (4) that the public interest favors an injunction." Wells
2  Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended
3  (Mar. 11, 2014) (citing Winter, 555 U.S. at 20).

4  The Ninth Circuit uses a sliding scale variant of the Winter standard: the "serious
5  questions" test. All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011)
6  (affirming the continued viability of this doctrine post-Winter). According to this test, "serious
7  questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can
8  support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a
9  likelihood of irreparable injury, and that the injunction is in the public interest." Id. at 1135. Courts
10 in the Ninth Circuit evaluate "these factors on a sliding scale, such that a stronger showing of one
11 element may offset a weaker showing of another." Recycle for Change v. City of Oakland, 856
12 F.3d 666, 669 (9th Cir. 2017).

**B.  § 2441 Petition for Writ of Habeas Corpus**

14 The Constitution guarantees that the writ of habeas corpus is "available to every individual
15 detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S.
16 Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon
17 the legality of that custody, and . . . the traditional function of the writ is to secure release from
18 illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be
19 granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or
20 federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means
21 of reviewing the legality of Executive detention, and it is in that context that its protections have
22 been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas
23 jurisdiction includes challenges to immigration-related detention. Zadvydas v. Davis, 533 U.S.
24 678, 687 (2001); see also Demore v. Kim, 538 U.S. 510, 517 (2003).

**C.  Mootness**

26 Mootness is "the doctrine of standing set in a time frame." Friends of the Earth, Inc. v.
27 Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 189 (2000) (quoting Arizonans for Official English v.
28 Ariz., 520 U.S. 43, 68 n. 22 (1997)). To present a live case or controversy, and thus avoid dismissal

on the ground of mootness, "the parties must continue to have a 'personal stake in the outcome' of the lawsuit." Lewis v. Cont'l. Bank Corp., 494 U.S. 472, 478 (1990) (quoting Los Angeles v. Lyons, 461 U.S. 95, 101 (1983)).

## IV.   DISCUSSION

Respondents opposed the issuance of a preliminary injunction for two reasons. First, Respondents asserted Petitioner should be subject to rearrest and detention due to his failure to comply with the bond conditions by the deadline imposed by this Court. See ECF No. 23 at 5. However, as discussed above, Petitioner did attempt to pay his bond on October 15, 2025, one day before the deadline. It appears that Respondents' counsel's representation that Petitioner had not complied with this Court's order was based on delays in ICE's payment processing system, which is not the fault of Petitioner. The bond was then processed on October 17, 2025. Accordingly, Respondents' contention that a preliminary injunction should not issue due to Petitioner's failure to satisfy bond is unavailing.

Respondents next argue a preliminary injunction should be denied as moot, because "Petitioner has received the relief requested and ordered by the Court" and he is not currently detained. ECF No. 23 at 4-5. The Court now turns to the issue of mootness.

The Supreme Court has explained that cases involving this very scenario do not become moot simply because a person is released from immigration detention pursuant to bond based on a court order providing temporary relief. See Nielsen v. Preap, 586 U.S. 392, 403 (2019) (plurality opinion) (claims of plaintiffs released on bond not moot "[u]nless th[e] preliminary [relief] was made permanent and not disturbed on appeal" because "these individuals faced the threat of re-arrest and mandatory detention."). Plaintiff's request for a preliminary injunction is not moot because Respondents have not disavowed their use of the automatic stay, nor their unlawful interpretation of the detention statutes. Further, Hurtado guarantees that the BIA will reverse the bond ruling of the IJ based on an unlawful statutory interpretation. Hurtado is "binding on all officers and employees of [DHS] or immigration judges in the administration of the immigration laws of the United States." 8 C.F.R. § 103.10(b). As the Supreme Court explained in Preap, it is

precisely because Petitioner remains vulnerable to re-detention, in this case under DHS and the BIA's interpretation of Respondents' detention authority under 8 U.S.C. § 1225(b)(2), that Petitioner's claim is not moot even after his release. See Preap, 586 U.S. at 403 (explaining that a noncitizen had a live claim where release on bond was granted following a preliminary injunction and removal proceedings were ongoing).

Where—as here—the government complies with a district court order that results in release from detention, that does not render a case moot. Instead, the government is free to appeal that order, and a party who received only temporary relief may continue to seek final relief. See id.; see also Carafas v. LaVallee, 391 U.S. 234, 238 (1968) (explaining that, under the federal habeas statute, "once . . . federal jurisdiction has attached in the District Court, it is not defeated by the release of the petitioner prior to completion of proceedings on such application."). Similarly, in Rodriguez Diaz v. Garland, the Ninth Circuit affirmed that the case was not moot where the government held a bond hearing ordered by the district court. 53 F.4th 1189, 1195 n.2 (9th Cir. 2022) ("The government's compliance with the district court's order does not moot its appeal.") (citing United States v. Golden Valley Elec. Ass'n, 689 F.3d 1108, 1112–13 (9th Cir. 2012)). Moreover, the issuance of a TRO ordering Petitioner's release with an expiration date certainly does not moot the need for a preliminary injunction, because after October 24, 2025, Respondents would be able to rearrest and re-detain Petitioner under 8 U.S.C. § 1225(b)(2) without running afoul of this Court's Order.

Further, the prospect of redetention is not speculative. Habeas petitions filed around the country confirm that Respondents are redetaining—and subjecting to their new mandatory detention policy—individuals previously released. See e.g., Hinestroza v. Kaiser, No. 25-CV-07559-JD, 2025 WL 2606983, at *1 (N.D. Cal. Sept. 9, 2025) (three petitioners originally released on their own recognizance before being subject to Respondents' mandatory detention policy); Hernandez Nieves v. Kaiser, No. 25-CV-06921-LB, 2025 WL 2533110, at *1 (N.D. Cal. Sept. 3, 2025) (same for one petitioner); Ramirez Clavijo v. Kaiser, No. 25-CV-06248-BLF, 2025 WL 2419263, at *2 (N.D. Cal. Aug. 21, 2025) (same); Guzman v. Andrews, No. 1:25-CV-01015-KES-SKO (HC), 2025 WL 2617256, at *2 (E.D. Cal. Sept. 9, 2025) (bond revoked for petitioner who

was later subjected to Respondents' mandatory detention policy). And again, that Respondents will prevail on their appeal of the IJ's decision to grant bond to Petitioner, is a foregone conclusion under Hurtado. That means that, unless this Court intervenes, whenever the BIA issues its decision as to DHS' appeal of the IJ's bond order, Petitioner will be subject to immediate redetention and remain detained, without the procedural protections of a bond hearing, until his removal proceedings are resolved.

As to the Winter factors, the Court fully incorporates by reference its reasoning and finding from the TRO Order that Petitioner is entitled to preliminary relief. See ECF No. 28.

## V.   CONCLUSION

Based on the foregoing **IT IS HEREBY ORDERED** that, pending resolution of the (ECF No. 1) Petition for Writ of Habeas Corpus on the merits, Respondents are **ENJOINED** from continuing to detain Petitioner pursuant to the C.F.R. § 1003.19(i)(2) automatic stay or otherwise denying Petitioner release on bond on the basis that he is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2).

**DATED:** October 24, 2025.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**